```
              UNITED STATES DISTRICT COURT
                DISTRICT OF CONNECTICUT
                                    :
LAURA BILODEAU                      :
                                    :
                                    :
v.                                  :   CIV. NO. 3:07CV1178 (JCH)
                                    :
ROBERT ADDISON VLACK                :
                                    :
                                    :
                                    :
                                    :
                                    :
```

RECOMMENDED RULING ON DEFENDANT'S MOTION TO ENFORCE SETTLEMENT
      AGREEMENT AND FOR ATTORNEYS' FEES AND COSTS

   Laura Bilodeau brought this action against her step-father, Robert Addison Vlack, alleging that he sexually abused her between the years 1968 and 1976, while she was a minor. Trial in this matter was scheduled for August 18, 2009. District Judge Janet Hall referred this case to the undersigned for a settlement conference [Doc. #64], which was conducted on June 25, 2009.

The Settlement Conference

   At the June 25 settlement conference, the parties reached an agreement on the essential terms of a settlement of this action, which they memorialized on the record at the conclusion of the conference. [Doc. #71]. The clients were canvassed in open court and represented that they understood and accepted the terms of the Agreement. [Doc. ##72, 80].

   As represented in court, the parties agreed to a specified

1

monetary payment to plaintiff, payment by defendant of the remainder of the fees outstanding for defendant's expert (which otherwise would have been the responsibility of the plaintiff), and execution of a formal written settlement agreement containing a confidentiality provision with no admission of liability on the part of defendant and a general release. [Doc. #80 at 2-3].  This Court added, "I want to thank everybody for their cooperation. I know this was a very difficult case for all the people involved in it and, you know, I hope that having resolved the litigation, that all of the parties can move on and . . . perhaps the family can start to do some healing." Id. at 3:23-25, 4:1-3.  Plaintiff stated she understood the terms of the agreement and found them acceptable.  Id. at 4:14-18. It was agreed that defendant's counsel would prepare the paperwork to formalize the Agreement in writing, and that the defendant would make the payments contemplated by the agreement within twenty (20) days.

Following the conference, the terms of the Agreement were reduced to writing by defendant's counsel and provided to plaintiff's counsel for review. Weller Aff. ¶6.  Counsel then engaged in some discussions and revisions, none of which involved the primary issue raised by this Motion, the applicability of the general release to the criminal investigation in New Hampshire.[1]

---

[1]Attorney McNamara initially responded with some comments about a liquidated damages provision that was contained in the confidentiality clause, and stated that he also would have to

Defendant executed the Agreement, and his executed copy, along with payment of the sum specified in the Agreement, was forwarded to plaintiff's counsel. Defendant also paid the balance owed to defendant's expert within the agreed-upon time period.

Plaintiff's Objection

Plaintiff subsequently refused to sign the Settlement Agreement, objecting to the general release of claims. Plaintiff contends that her Connecticut counsel failed to disclose that she would be prohibited from further pursuing a criminal complaint against defendant in New Hampshire.[2] She testified that her understanding of the agreement was that the District of Connecticut civil action was settled, money would be paid, the terms of the settlement were confidential and the case record would remain under seal. Plaintiff testified that once the Connecticut civil action was settled, she intended to focus her energies on pursuing criminal charges against the defendant in

---

review the Agreement with the plaintiff.  Weller Aff. ¶6. Attorney McNamara later requested that defendant agree to a general release of the plaintiff.  Id.  The revised Agreement presented to plaintiff includes a general release by defendant and omitted the liquidated damages provision in the confidentiality clause.  Id.

[2]In the spring 1977, Bilodeau had reported her alleged sexual abuse to the Plaistow (New Hampshire) Police Department. Bilodeau first considered filing criminal charges against her step-father when she worked as police officer in Plaistow from 1982 until 1986 or 1987.  She never filed criminal charges against Vlack. [Doc. #60 at 4].

New Hampshire.  She testified she had no recollection that the criminal case was ever discussed in the context of settling this civil action.[3]

Motion to Enforce

In August, defendant moved the Court to enforce the Agreement and to order plaintiff to execute the Agreement within ten days from the date of the Court's order. **[Doc. #76].** Plaintiff did not file an objection to the motion. Both parties sought attorneys' fees and costs incurred in connection with this motion.[4]  **[Doc. ##76, 83].** A hearing on the Motion was held on September 3, 2009. [Doc. #84]. Plaintiff was present and represented by her Connecticut counsel, F. Timothy McNamara, and counsel from New Hampshire, Brian McCaffrey.

---

[3] At a hearing on the Motion to Enforce, plaintiff provided a letter from the Rockingham (NH) County Attorney, stating that plaintiff's criminal allegations against defendant were "currently under review" and an Assistant County Attorney was "determining whether or not to seek felony indictments. . . ." "It currently remains an open file." [Pl. Ex. 1, Rockingham County Attorney Let. dated 9/2/09].

[4] Defendant seeks attorneys' fees, in the amount of $8,901, and costs, in the amount of $413.89, incurred in drafting the motion to enforce settlement agreement, preparation for the hearing on the motion, and travel/attendance at the hearing. [Doc. #85 at 2].  Plaintiff seeks unspecified costs (identified as witness fees, court reporter's fee and attorney's fees) associated with the defense of the motion. [Doc. #83 at 1]. Plaintiff offered no billing records or invoices to support the motion. Id. Plaintiff's Connecticut counsel Timothy McNamara did not seek attorney's fees.  Id.

4

Intervening Events

In December, 2009, Attorney McNamara died. Atty. William Sweeney assumed responsibility for Atty. McNamara's pending matters and opened discussions with defense counsel about resolving the impasse. The parties were able to come to a tentative agreement on additional language addressing Ms.Bilodeau's concerns about the release, but could not agree on the outstanding claim for attorneys' fees.

Then, in February 2010, indictments against the defendant arising out of the plaintiff's complaint were filed by a grand jury in Rockingham County, NH.

The parties reported to the Court on March 8 that it would be necessary for the Court to decide the pending Motion.

Discussion

"Under Connecticut law, the enforceability of a settlement agreement is determined using general principles of contract law." Brandt v. MIT Development Corp., 552 F. Supp. 2d 304, 319 (D. Conn. 2008) (citing Omega Engineering, Inc. v. Omega, S.A.U, 432 F.3d 437, 443 (2d Cir. 2005)).  "In Connecticut, a contract is binding if the parties mutually assent to its terms," Omega, 552 F.3d at 443  (citing Johnson v. Schmitz, 237 F. Supp. 2d 183, 189 (D. Conn. 2002) (applying this rule to settlement agreements)), . . . "and when the terms of the agreement are

'clear and unambiguous.'". Id. at 444 (citing Audubon Parking Associs. Ltd. P'ship v. Barclay & Stubbs, Inc. 225 Conn. 804, 811 (1993). "Generally, a trial court has the inherent power to enforce summarily a settlement agreement as a matter of law only when the terms of the agreement are clear and unambiguous . . . and when the parties do not dispute the terms of the agreement. As a result, the court's authority in such a circumstance is limited to enforcing the undisputed terms of the settlement agreement that are clearly and unambiguously before it, and the court has no discretion to impose terms that conflict with the agreement." Nanni v. Dino Corp., No. 29340, 2009 WL 2871363, *2 (Conn. App. Sept. 15, 2009) (internal quotation marks and citations omitted).

Where a settlement agreement has not been signed, Connecticut courts determine whether there has been mutual assent using a three-part test. Omega, 432 F.3d at 443. "The parties' intent is determined from the (1) language used, (2) circumstances surrounding the transaction, including the motives of the parties, and (3) purposes which they sought to accomplish." Id. (citing Klein v. Chatfiedld, 166 Conn. 76, 80 (1974)). "The intention of the parties manifested by their words and acts is essential to determin[ing]" whether the parties entered into a settlement agreement." Brandt, 552 F. Supp. 2d at 319 (quoting Hess v. Sumouchel Paper Co., 154 Conn. 343, 347

(1966)).

There is no dispute that the parties fairly reported the case settled, and that the settlement terms included a "general release." At the conclusion of the settlement conference in June 2009, the Court had detailed exchanges with the parties and their attorneys, confirming that they had indeed settled the case. As set forth above, this agreement was placed on the record and plaintiff stated that she understood the terms of the settlement and found the terms acceptable.  June 25, 2009 Tr 4:14-4:17.

Nor can there be any dispute that defendant agreed to settle the case to put the allegations behind him and to avoid further attorneys' fees and costs associated with going to trial.  He complied with the terms of the settlement reached on June 25, 2009.  Defendant's counsel drafted the Agreement, the defendant signed it on July 14, 2009, and it was forwarded to plaintiff's counsel for plaintiff's signature. The settlement monies were paid over to plaintiff's counsel, and  they remain in his successor's escrow account.

Plaintiff maintains that it was her intention to settle only this civil action.  She contends she did not agree to terms that restrained her from pursuing a criminal complaint. Based on the transcript of June 25, 2009 settlement, plaintiff's testimony at the September 2, 2009 hearing, notes from the settlement conference and a review of the Agreement, the Court cannot find

7

that Ms. Bilodeau unambiguously agreed to refrain from further pursuing the filing of criminal charges against defendant in New Hampshire. This detail was not specifically stated on the record and the commitment does not appear in the Court's notes from the settlement conference.

When plaintiff refused to sign the written Agreement as presented for her signature, she apparently objected to the restrictions in the general release. Her position was first communicated to the Court by her counsel in a telephone conference on July 28. The Court finds that the <u>attorneys</u> had a clear understanding of the effect of a general release at the time the settlement was placed in the record on June 25, 2009. There was discussion with both counsel about the pending investigation in New Hampshire and the possibility that it would result in criminal charges. Lawyers for both parties were aware that plaintiff had an obligation to cooperate in the pending investigation, if asked, and that, if charges were filed, plaintiff could not be precluded by the settlement agreement from testifying or otherwise cooperating with a prosecution.

However, the defendant's expectation was that, pursuant to a general release, plaintiff would no longer be advocating or encouraging the County Attorney to pursue criminal charges. The fact that this was also the understanding of plaintiff's counsel is reflected in his representation at the hearing on the Motion

to Enforce that, when plaintiff remarked to him on leaving the courthouse after the settlement conference that she intended to contact the County Attorney to turn over material gathered in the civil case for use in the criminal investigation, Atty. McNamara told her she could not do that.

No understanding of the impact of a general release on plaintiff's involvement in the pending criminal investigation was memorialized on the record at the conclusion of the settlement conference, and there is no evidence that Atty. McNamara had any idea plaintiff would take this position. Even plaintiff's post-conference statement to Atty. McNamara after they had left the courthouse did not identify the release as a deal-breaker, as Ms. Bilodeau seemed to accept Atty. McNamara's admonition regarding further use of the evidence developed in the civil case. The fact that Atty. McNamara let defense counsel draft an agreement, negotiated with defense counsel about certain language in the agreement, without raising this issue, and forwarded the signed agreement to his client for her signature is strong evidence that Atty. McNamara was unaware that plaintiff would refuse to sign the agreement over this issue.

However, plaintiff's post-conference statement to Atty. McNamara is some corroboration for plaintiff's testimony at the hearing on the Motion to Enforce that she would not have agreed to a general release if she had understood that the release would

preclude her from further advocating for criminal charges. This was not a position that Ms. Bilodeau expressed at any time during the settlement conference.  At the Motion hearing, Atty. McNamara stated that Ms. Bilodeau believed he failed to disclose that term, thus creating a conflict between them.[5] It is difficult to understand how Ms. Bilodeau could have been unaware that, in agreeing to pay her to settle the civil case, Mr.Vlack was motivated in part by an expectation that the plaintiff would stop repeating the accusations which had divided the family over the years and begin to move beyond the injuries she was claiming he had inflicted on her. And, as pointed out above, Atty, McNamara, an experienced and honorable advocate, allowed the defendant to re-draft, execute and comply with the agreement, which he would never have done had he known that his client was not in agreement with the terms.

   Both parties had objectives that the settlement sought to accomplish, that is, resolution of the litigation and financial remuneration for plaintiff's claims without going through a potentially difficult and emotional trial and taking their chances on a jury verdict. Defendant reasonably expected that his

---

    [5]Plaintiff appeared with a second attorney, Attorney McCaffrey, from New Hampshire to represent her at the hearing. Defendant did not object. Attorney McNamara stated that, as an officer of the court, he would not have represented that the case was settled if he knew that plaintiff was unwilling to give up pursuit of her criminal complaint.

payment would end expensive litigation and achieve a final resolution of Ms. Bilodeau's claims, which were generating considerable stress within the family.

At the Motion hearing, defense counsel represented that the defendant understood that the Agreement could not forestall a State of New Hampshire decision to bring criminal charges against defendant. Rather, the Release required that plaintiff refrain from actively advocating further for criminal charges against defendant; it did not preclude her cooperation if the state filed criminal charges. Defendant's position at the conference was that he could not, and would not, settle this civil case in the absence of plaintiff's Agreement to refrain from pursuing other litigation, including criminal charges, and that he expected a settlement would promote peace within the family.

Plaintiff argues that the Agreement is not enforceable because there was no meeting of the minds regarding the general release. While the law allows the Court to enforce the uncontested portions of the Agreement, the lack of specificity over the meaning of the General Release effectively deprived the parties of a settlement term critical to both parties. As a practical matter, the subsequent decision of the Rockingham County attorney to prosecute would render enforcement of the General Release as understood by the defendant moot, and it would be unfair to hold the defendant to the uncontested terms of a

11

settlement which would deny him the benefit of the bargain he believed he made.

For the reasons stated, defendant's Motion to Enforce the Settlement Agreement now **[Doc. #76]** is **DENIED**.

Cross-Motions for Attorneys' Fees and Costs

Defendant seeks an award of attorneys' fees and costs associated with the filing of the Motion to Enforce to sanction plaintiff for "bad-faith misconduct."[6] [Doc. #76 at 11]. Defendant argues that, "Plaintiff's continued effort to encourage a criminal prosecution of the Defendant after agreeing to execute a general release amounts to a willful abuse of our legal system and an utter disregard of the binding effect of a settlement placed on the record in Federal District Court." Id. at 12. However, there is no direct evidence that plaintiff continued to seek a criminal prosecution after Atty. McNamara told her the settlement would preclude her from doing so.

On the current record, and without confirmation by Atty. McNamara that his client understood specifically before she agreed to a general release that it would preclude her from advocating further for criminal prosecution of the defendant (confirmation which Atty. McNamara was understandably careful not

---

[6]Defendant seeks $8,901.00 in attorneys' fees and $413.89 in costs.

12

to give), the Court cannot find that the parties' agreement to a General Release was based on a meeting of the minds of the clients (as opposed to the attorneys) regarding plaintiff's continued pursuit of criminal charges.  See Role v. Eureka Lodge No. 434, I.A. of M & A.W. AFL-CIO, 402 F.3d 314, 318 (2d Cir. 2005) ("[A] voluntary, clear, explicit, and unqualified stipulation of dismissal entered into by the parties in court and on the record is enforceable even it the agreement is never reduced to writing, signed, or filed, as contemplated by Fed. R. Civ. P. 41(a).").

    Nevertheless, the Court finds that plaintiff was well informed during the settlement conference that defendant's motivation in settling was to bring finality to plaintiff's allegations of sexual abuse and allow the family to begin to heal. The Court finds it was unreasonable for plaintiff to fail to disclose her intention to continue to actively press her criminal complaint in New Hampshire once the civil case was settled, either during the negotiations or to counsel prior to his agreement to the settlement on her behalf and her endorsement of this agreement in open court.

    And having been advised by her counsel that she could not use evidence from the civil case to further the criminal investigation on the day of the settlement conference, it was bad faith for plaintiff to wait to disclose her unwillingness to give

13

up the opportunity to encourage the prosecution of the defendant until the written Settlement Agreement had been negotiated and signed, and the defendant had complied with his payment obligations under it. Her withholding of that information directly caused the defendant to unnecessarily incur further legal expenses and costs.

For this reason, the Court finds that an award of reasonable fees and expenses is warranted to compensate defendant for costs he would not otherwise have incurred, i.e. for counsel to prepare the draft and final Settlement Agreements and confer with plaintiff's counsel about the language, and for complying with its terms before the plaintiff declined to sign it.

The district court possesses the inherent power to levy sanctions.  Neither the adoption of 28 U.S.C. § 1927, a federal statute authorizing sanctions, nor the Federal Rules of Civil Procedure displace the inherent power of the court to sanction. Chambers v. NASCO, Inc., 501 U.S. 32, 111 (1991).  The court's inherent power includes the authority to sanction where "a party has "acted in bad faith, vexatiously, wantonly, or for oppressive reasons." Chambers, 501 U.S. at 33, quoting Alyeska Pipeline Service Co. v. Wilderness Society, 421 U.S. 240; See also Sassower v. Field, 973 F.2d 75, 80-81 (1992) ("The Supreme Court has made clear that a district court has inherent authority to sanction parties appearing before it for acting in bad faith,

vexatiously, wantonly, or for oppressive reasons.")  The inherent sanctioning power of the court may be particularly relevant where, as here, "the conduct at issue is not covered by one of the other sanctioning provisions." Chambers, 501 U.S. at 50.

The inherent sanctioning power of the court is not without bound, however. Courts must exercise restraint in sanctioning parties.  "Because of their very potency, inherent powers must be exercised with restraint and discretion." Chambers, 501 U.S. at 44,(citing Roadway Express, Inc. v. Piper, 447 U.S. 752 (1980). The Supreme Court explained that a "primary aspect of that discretion is the ability to fashion an appropriate sanction for conduct which abuses the judicial process." Chambers, 501 U.S. at 44.

In Chambers, the Court noted that the inherent power of courts to sanction is in some ways narrower than sanctioning power authorized by statute or rules: the inherent sanctioning power is limited to "cases in which a litigant has engaged in bad-faith conduct or willful disobedience of a court's orders." Chambers, 501 U.S. at 47.  In this case it is clear that plaintiff acted in bad faith. The longstanding animosity between the plaintiff and the defendant, understandable in light of the very serious allegations which the plaintiff made against him, cannot excuse conduct which undermined the legitimacy of the settlement process by inducing the defendant to comply with an

agreement which the plaintiff now says she had no intention of entering. The Court cannot – and would not – sanction a party for refusing to settle. But having agreed to a settlement, and understanding that the defendant thought he was paying to obtain a cessation of hostilities, the plaintiff abused the process by failing to notify her lawyer that she would not agree to release the defendant as he expected.

The Court awards fees to the defendant in the amount of $4,000, to compensate him for the reasonable legal expenses and other costs incurred as his counsel negotiated and revised the language of the written Settlement Agreement and he signed and complied with his obligations under what he believed was the final Agreement.

Defendant's Motion for Attorneys' Fees and Costs **[Doc. #76]** is **GRANTED** in the amount of $4,000. There is no basis for awarding fees to the plaintiff here. Plaintiff's Motion for Attorney's Fees and Costs **[Doc. #83]** is **DENIED**.

Conclusion

For the reasons stated, defendant's Motion to Enforce the Settlement Agreement **[Doc. #76]** is **DENIED**; Defendant's Motion for Attorneys' Fees and Costs **[Doc. #76]** is **GRANTED** in the amount of $4,000. Plaintiff's Motion for Attorneys' Fees and Costs **[Doc. #83]** is **DENIED**.

Defendant's settlement checks or the funds paid over to plaintiff's counsel will be returned to defendant's counsel within seven days. Plaintiff will reimburse defendant for the payment to defendant's expert (Opshal) within thirty days. Plaintiff will pay the award of expenses to defendant within thirty days.

The Clerk of the Court will reopen the case. The parties will report to Judge Hall that the matter is ready for trial. Judge Hall will reset the deadlines for compliance with the pretrial order dated May 22, 2009. [Doc. #61].

Any objections to this recommended ruling must be filed with the Clerk of the Court within fourteen (14) days of the receipt of this order. Failure to object within fourteen (14) days may preclude appellate review. <u>See</u> 28 U.S.C. § 636(b)(1); Rules 72, 6(a) and 6(e) of the Federal Rules of Civil Procedure; Rule 72.2 of the Local Rules for United States Magistrates; <u>Small v. Secretary of H.H.S.</u>, 892 F.2d 15 (2d Cir. 1989)(per curiam); <u>F.D.I.C. v. Hillcrest Assoc.</u>, 66 F.3d 566, 569 (2d Cir. 1995).

Dated at Bridgeport, this 17th day of March, 2010.

__/s/_____
HOLLY B. FITZSIMMONS
UNITED STATES MAGISTRATE JUDGE