**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| LAURA BILODEAU, Plaintiff, | : | CIVIL ACTION NO. 07-cv-1178 (JCH) |
| v. | : | |
| ROBERT ADDISON VLACK, Defendant, | : | MAY 26, 2010 |

**RULING RE: PLAINTIFF'S OBJECTION (Doc. No. 96) TO THE MAGISTRATE JUDGE'S RECOMMENDED RULING (Doc. No. 95) DETERMINING PENDING MOTIONS (Docs. No. 76, 83. 97 & 99)**

## I. INTRODUCTION

Plaintiff, Laura Bilodeau, originally brought this action against her step-father, Robert Addison Vlack, alleging that he sexually abused her while she was a minor. The parties held a settlement conference before Magistrate Judge Holly B. Fitzsimmons on June 25, 2009, and the case was reported settled on June 26, 2009. See Order of Dismissal (Doc. No. 73). Bilodeau later refused to sign the Settlement Agreement and on August 3, 2009, Vlack filed a Motion to Enforce the Settlement Agreement. See Motion to Enforce Settlement Agreement (Doc. No. 76). Both parties sought attorneys' fees and costs incurred in connection with this Motion. See Def's Mot. for Attys' Fees and Costs (Doc. No. 76); Pl.'s Mot. for Costs and Fees (Doc. No. 83). The motions were referred to Magistrate Judge Fitzsimmons.

On March 17, 2010, Magistrate Judge Fitzsimmons issued a Recommended Ruling denying Vlack's Motion to Enforce the Settlement, granting his Motion for Attorneys' Fees and Costs, and denying Bilodeau's Motion for Costs and Fees. See Recommended Ruling ("RR") (Doc. No. 95). On March 30, Bilodeau objected to the

Recommended Ruling with regard to the ruling on defendant's attorneys' fees. See Objection to RR (Doc. No. 96). For the reasons stated below, the Recommended Ruling is affirmed, adopted, and ratified in part. Plaintiff's Objection (Doc. No. 96) is sustained. Defendant's Motion to Enforce the Settlement (Doc. No. 76) is denied, defendant's Motion for Attorneys Fees and Costs (Doc. No. 76) is denied, and plaintiff's Motion for Costs and Fees (Doc. No. 83) is denied.

## II. STANDARD OF REVIEW

Under section 636(b) of title 28 of the United States Code, a district judge may designate a magistrate judge to hear and determine any pending pretrial matter, except certain dispositive motions, including "a motion for injunctive relief, for judgment on the pleadings, for summary judgment, to dismiss or quash an indictment or information made by the defendant, to suppress evidence in a criminal case, to dismiss or to permit maintenance of a class action, to dismiss for failure to state a claim upon which relief can be granted, and to involuntarily dismiss an action." See 28 U.S.C. § 636(b)(1)(A). However, a district judge may assign such a dispositive motion to a magistrate judge for proposed findings of fact and a recommended disposition. See 28 U.S.C. § 636(b)(1)(B); FED. R. CIV. P. 72(b). A district court reviews, de novo, those portions of a magistrate judge's recommended ruling to which an objection is made. The court may adopt, reject, or modify, in whole or in part, the magistrate judge's recommended ruling. See 28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b)(3).

The Second Circuit has held that the list of dispositive motions in 28 U.S.C. § 636(b)(1)(A) is non-exhaustive. See Williams v. Beemiller, Inc., 527 F.3d 259, 265 (2d Cir. 2008). The portion of the Recommended Ruling before this court, on Objection by

the plaintiff, is the Motion for Attorneys' Costs and Fees. See Pl.'s Objection at 1. Federal Rule of Civil Procedure 54(d)(2)(D) states that a district court "may refer a motion for attorneys fees to a magistrate judge under Rule 72(b) as if it were a dispositive pretrial matter." FED. R. CIV. P. 54(d)(2)(D). Therefore, the review of the Recommended Ruling on the Motion for Attorneys' Fees and Costs is de novo.

## III. BACKGROUND

Magistrate Judge Fitzsimmons held a settlement conference in this case on June 25, 2009, and the parties reached an agreement on the essential terms of the settlement. See Minute Entry for 6/25/09 Proceedings (Doc. No. 72). The Agreement included a payment to the plaintiff, payment by the defendant of his own expert's fees, and the execution of a formal written settlement agreement which contained a confidentiality provision with no admission of liability on the part of the defendant and a general release. See RR at 1-2. Both Bilodeau and Vlack were canvassed on the record and represented to the court that they understood and accepted the terms of the Agreement. See Tr. (6/25/09), 4:14-25 (Doc. No. 80).

Following the conference, defendant's counsel drafted the written agreement and provided it to Bilodeau's counsel for review. Without showing it to Bilodeau, counsel engaged in discussion and revisions, none of which touched on the general release and its applicability to a concurrent criminal investigation in New Hampshire, which eventually became the subject of the Motion to Enforce the Settlement. Vlack signed the Agreement on July 14, 2009, and forwarded it to Bilodeau for her signature. Vlack also paid the amount agreed upon in the Agreement; those monies remain in an escrow account.

Objecting to the restrictions of the general release, Bilodeau refused to sign the Agreement. This refusal to sign was communicated to Magistrate Judge Fitzsimmons on July 28, 2009. Vlack filed a Motion to Enforce the Settlement Agreement and for Attorneys' Fees and Costs on August 3, 2009. Magistrate Judge Fitzsimmons held an evidentiary hearing on the Motion on September 3, 2009. At this hearing, Bilodeau was represented by visiting counsel from New Hampshire because she believed that her Connecticut counsel, Attorney F. Timothy McNamara, had failed to disclose the terms of the general release to her, thus creating a conflict between them. See RR at 10. Bilodeau testified that her understanding of the agreement was that, once the Connecticut civil action settled, the case record would remain under seal, and she could focus her attention on pursuing the criminal charges in New Hampshire. See id. at 3. Bilodeau testified that she had no recollection of any discussion of the criminal case during the settlement discussions. Defense counsel stated that Vlack's understanding of the general release was that it required Bilodeau to cease actively seeking prosecution in New Hampshire, but that she could cooperate with authorities if they chose to bring charges. See id. at 11.

At the evidentiary hearing, Attorney McNamara stated that, on the day of the settlement conference, Bilodeau had told him that she intended to contact the County Attorney in New Hampshire and turn over certain materials, including a video deposition, that she had gathered for this case for use in the criminal investigation. Attorney McNamara told Bilodeau that she could not do so because those materials were confidential and were to remain sealed. See RR at 8-9. Bilodeau has acted consistent with this advice.

Attorney McNamara passed away in December 2009. New counsel assumed responsibility for Attorney McNamara's pending matters and spoke with Vlack's counsel about resolving the impasse. The parties came to a tentative agreement about the language of the release, but were unable to resolve the attorneys' fees issue.

In February 2010, a grand jury in Rockingham, NH, filed indictments against Vlack arising out of Bilodeau's complaint. See RR at 5.

## IV. DISCUSSION

### A. Recommended Ruling

Bilodeau did not object to the portion of Magistrate Judge Fitzsimmons's Recommended Ruling denying the Motion to Enforce the Settlement Agreement. See Pl.'s Objection at 1. Therefore the court affirms, adopts, and ratifies that portion of the Ruling. However, the court must briefly outline Magistrate Judge Fitzsimmons's Ruling on that Motion in order to address Bilodeau's limited Objection.

A trial court has the power to enforce a settlement agreement "only when the terms of the agreement are clear and unambiguous." See Nanni v. Dino Corp., 117 Conn. App. 61, (App. Ct. Sept. 15, 2009). Where the settlement agreement has not been signed, Connecticut courts look to a three-part test to determine whether there has been mutual assent: (1) the language used, (2) the circumstances surrounding the transaction, including the motives of the parties, and (3) the purposes which they sought to accomplish. See Omega Eng'g, Inc. v. Omega, S.A.U., 432 F.3d 437, 444 (2d Cir. 2005).

Magistrate Judge Fitzsimmons could not find that Bilodeau "unambiguously agreed to refrain from further pursuing the filing of criminal charges against [Vlack] in

New Hampshire." See RR at 7-8. The magistrate judge found that the "lack of specificity over the meaning of the General Release effectively deprived the parties of a settlement term critical to both parties." See RR at 11. Practically, because of the decision by New Hampshire authorities to prosecute, it would be unfair to hold [Vlack] to the uncontested terms of the settlement which would deny him the benefit of the bargain he believed he made." See RR at 11-12. This court agrees.

Magistrate Judge Fitzsimmons granted Vlack's Motion for Attorneys' Fees and Costs in the amount of $4,000 to compensate Vlack for costs he would not have incurred had Bilodeau communicated her refusal to sign the general release. This amount was meant to address the costs of Vlack's counsel drafting the Settlement Agreement, conferring with Bilodeau's counsel, and complying with the terms of the Agreement. Billodeau objected to this portion of the Recommended Ruling.

The district court possesses the inherent power to impose sanctions. See Chambers v. NASCO, Inc., 501 U.S. 32, 44-45 (1992). This power stems from the very nature of courts and their need to be able to "manage their own affairs so as to achieve the orderly and expeditious disposition of cases." See id. at 43. One aspect of this power is the authority to assess costs and fees against a party who has "acted in bad faith, vexatiously, wantonly, or for oppressive reasons." See id. at 45-46. This power depends on "how the parties conduct themselves during the litigation." See id. at 53.

Because of the "very potency" of the inherent power to sanction, the Supreme Court has warned that it should only be exercised with "restraint and discretion." See id. at 44. It is limited to cases "in which a litigant has engaged in bad-faith conduct or willful disobedience of a court's orders." See id. at 47. The Second Circuit has held

that awards under the bad-faith exception cannot be upheld unless there is both "clear evidence that the challenged actions are entirely without color, and [are taken] for reasons of harassment or delay or for other improper purposes." See Oliveri v. Thompson, 803 F.2d 1265, 1272 (2d Cir. 1986). There must be a "high degree of specificity in the factual findings" accompanying such an award. See id.

Magistrate Judge Fitzsimmons found that Bilodeau had acted in bad faith. See RR at 15. She held that it was "unreasonable for the plaintiff to fail to disclose her intention to continue to actively press her criminal complaint in New Hampshire . . . either during the negotiations or to counsel prior to his agreement to the settlement on her behalf and her endorsement of this agreement in open court." See RR at 13. In particular, Magistrate Judge Fitzsimmons found that it was "bad faith for [Bilodeau] to wait to disclose her unwillingness to give up the opportunity to encourage the prosecution of the defendant until the written Settlement Agreement had been negotiated and signed, and the defendant had complied with his payment obligations under it. Her withholding of that information directly caused the defendant to unnecessarily incur further legal expenses and costs." See RR at 13-14.

This court does not agree. Although Bilodeau "failed to disclose her intention to continue to actively press her criminal complaint," it can fairly be said that Vlack similarly failed to set forth his intentions regarding the criminal complaint. The criminal complaint was first made in 1977; Vlack was well aware of its pendency prior to the settlement discussions. If both parties are at fault, this court cannot find that "clear evidence" that Bilodeau alone was acting "without color" or for an "improper purpose."

Further, it is unclear to this court that Bilodeau was acting in bad faith. Bilodeau

testified that she did not recall the criminal charges being discussed during settlement negotiations. On the record, Bilodeau only agreed to a "general release." See Tr. (6/25/09) at 3:1-3. It was reasonable for Bilodeau to understand those terms to mean a release of all civil claims.[1] Judge Fitzsimmons found that Bilodeau did not "unambiguously agree[] to refrain from further pursuing the filing of criminal charges against [Vlack] in New Hampshire." See RR at 7-8. Given the ambiguity surrounding the terms of the "general release," this court cannot find the necessary "clear evidence" that Bilodeau was acting in bad faith when she refused to sign the release once she had seen the terms. Additionally, the fact that Bilodeau felt that she had a conflict with Attorney McNamara because he had failed to disclose the terms of the general release to her provides support for Bilodeau's position that she did not understand what the terms of that release were to be when she agreed to it on the record.

Judge Fitzsimmons rests her ruling on the fact that, after "having been advised by her counsel that she could not use evidence from the civil case to further the criminal investigation on the day of the settlement conference, it was bad faith for [Bilodeau] to wait to disclose her willingness to give up the opportunity to encourage the prosecution of the defendant until the written Settlement Agreement had been negotiated and signed. . . ." See RR at 13-14. However, Bilodeau's conversation with McNamara on the day of the settlement conference dealt with whether specific evidence was covered by the confidentiality agreement and did not address the terms of the "general release."

---

[1] It cannot be fairly said that a criminal prosecution is a "claim." Cf., e.g., State v. Parks, 2009 U.S. Dist. LEXIS 93812, at *3-4 (D. Conn. Oct. 2, 2009)(plaintiff must file civil complaints 'independent of the criminal prosecution at bar").

Bilodeau understood and acknowledged that the confidentiality agreement would bar her from volunteering a deposition under seal to the New Hampshire prosecutors. However, Bilodeau had no reason to think that the release would restrict her ability to pursue the criminal matter until she saw the language of the release.

Finally, it is not clear to this court that Bilodeau delayed in relaying her refusal to sign the general release. Bilodeau argues that she expressed this intent on or around July 6, 2009. See Pl.'s Objection at 14. However, the court notes that Vlack signed the Agreement and sent the settlement money to Bilodeau's counsel on July 14. See RR at 7. This court finds it improbable that Vlack would have turned over the settlement money knowing that Bilodeau was refusing to sign the release. Even so, Bilodeau's position was relayed to Judge Fitzsimmons by July 28, just two weeks later. Only one month lapsed from the time of the settlement conference and Bilodeau making her refusal known to the court. Considering that the specific terms of the Settlement Agreement had yet to be worked out at time of the settlement conference, and that Bilodeau was unaware of the terms at that time, or until weeks later, this court does not find that the delay to be unreasonable under these circumstances.

Therefore, this court finds that both parties were unclear about their expectations of the terms of the "general release" at the settlement conference, and that Bilodeau was not unreasonable in thinking that the release would only cover any civil claims. The court further finds that Attorney McNamara's warning to Bilodeau on the day of the settlement conference addressed the scope of the confidentiality agreement, not the general release, and therefore Bilodeau was not aware of Vlack's or Attorney McNamara's view of the terms of the "general release" until she saw the language in

July. Finally, the court finds that Bilodeau made her refusal to sign the general release clear within shortly after receiving the terms of the general release for review. Based on the record before it, the court cannot conclude that there is "clear evidence" of bad faith or an improper purpose on Bilodeau's part. Therefore, the court sustains Bilodeau's Objection to the Recommended Ruling and denies Vlack's first Motion for Attorneys' Fees and Costs.

B. Further Motions

On April 9, 2010, Vlack filed a renewed Motion for Enforcement of Court Order and for Attorney's Fees and Costs. See Mot. to Enforce Court Order and for Attys' Fees and Costs (Docs. No. 97 & 99). Vlack argued that Magistrate Judge Fitzsimmons' Recommended Ruling ordered the settlement funds to be returned within seven days, but as of the date of the Motion, the funds had not been returned. See Mot. to Enforce Court Order at 1 (Doc. No. 97). Bilodeau argued that the Recommended Ruling did not become final until this court reviewed the ruling de novo. See Pl.'s Objection to Mot. to Enforce Court Order at 1 (Doc. No. 102). This is not entirely correct, as Bilodeau did not object, and in fact endorsed, Magistrate Judge Fitzsimmons's Ruling on the Motion to Enforce the Settlement Agreement. See Pl.'s Objection to RR at 1. Therefore, this court needed to review that portion of the Recommended Ruling only for clear error, not de novo. See FED R. CIV. P. 72(b) advisory committee's note. However, Bilodeau is correct that the Ruling did not become final until this court reviewed the entirety of Judge Fitzsimmons's Recommended Ruling, which it has now done. See id. ("When no timely objection is filed, the court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation."). The court grants

Vlack's Motion for Enforcement of Court Order (Doc. No. 97) and directs Bilodeau to return the settlement funds within seven days from the date of this Ruling.

Vlack also asked this court to impose further sanctions on Bilodeau for her refusal to return the settlement funds. See Mot. for Attorneys' Fees and Costs at 5 (Doc. No. 99). Vlack argues that her refusal was "entirely without color." See Oliveri, 803 F.2d at 1272. This court disagrees. While it may have been questionable for Bilodeau to continue to hold onto the settlement funds, the court does not find clear evidence of an improper purpose or wilful disobedience of a court order. See Oliveri, 803 F.2d at 1272. Because Bilodeau objected to the Recommended Ruling, this court could not adopt, affirm, and ratify Judge Fitzsimmons's Ruling on the Motion to Enforce the Settlement until addressing the Objection. There is not any evidence in the record that Bilodeau was willfully disobeying the court order; in fact, the email from Bilodeau's counsel to Vlack's counsel makes it clear that Bilodeau is waiting for this court's final ruling before returning the funds. See Email from William J. Sweeney, Ex. B to Def.s' Mot. for Att'ys Fees and Costs. In light of the fact that the Recommended Ruling had not been reviewed, and thus was not yet final, the court does not find clear evidence to support Vlack's Motion for Attorneys' Fees and Costs (Doc. No. 99), and denies the Motion.

## V. CONCLUSION

For the reasons discussed herein, and based on a review of the Magistrate Judge's Recommended Ruling (Doc. No. 95), that Ruling is **AFFIRMED, ADOPTED, and RATIFIED** in part. The plaintiff's Objection to the Magistrate Judge's

Recommended Ruling on attorneys' fees (Doc. No. 96) is **SUSTAINED**, as discussed herein. Vlack's Motion to Enforce the Settlement Agreement (Doc. No. 76) is **DENIED**. Bilodeau's Motion for Costs and Fees (Doc. No. 83) is **DENIED**. Vlack's two Motions for Attorneys' Fees and Costs (Docs. No. 76 & 99) are **DENIED**. Vlack's Motion to Enforce Court Order (Doc. No. 97) is **GRANTED** and Bilodeau is directed to return the settlement funds by **June 2, 2010.**

**SO ORDERED.**

Dated at Bridgeport, Connecticut this 26th day of May 2010.

/s/ Janet C. Hall
Janet C. Hall
United States District Judge